Case number 15-7100, Encyclopaedia Britannica, Inc. Appellant v. Dickstein Shapiro, LLP Mr. Hostany for the Appellant, Mr. Downs for the Appellant Go ahead, Ms. Hostany. Pardon?  Go ahead. Thank you, Your Honor. Joe Hostany, I'm here on behalf of Encyclopaedia Britannica and I have been before the Seventh Circuit as an AUSA and before the Federal Circuit as a patent attorney, but never here. So it's an honor to appear before this Court, the Court of Appeals for the District of Columbia. May it please the Court, Alice, the decision that's discussed so heavily here, was not the law in the 1990s when the events here occurred. Dickstein Shapiro, as the prosecution attorneys for Encyclopaedia Britannica, repeatedly praised the inventions, how they were new, how they were useful, how they contributed to an advance, and made those remarks. They were acting as attorneys for your now client. That's correct. I'm not sure that it's relevant that they issued statements in favor of their client. They have an obligation under PTO rules, duty of candor with the patent office. They must not misrepresent. All lawyers have a duty of candor. I agree. And all of them are permitted to put things in the light most favorable of their client, provided that there can be a good fact. I agree, but before the patent office, you're a member of a special patent party, you have some requirements, you must bring forth unfavorable evidence. And the time I held somebody had violated it, I got reversed by the Federal Circuit. Nobody, and the granddaddy patent, the 671, the one that was filed in 1989, went through something like ten years of examination, re-examination, two trips to the Board of Patent Appeals, two trips to the District Court for the District of Columbia. Nobody ever said this was an abstract idea. No examiner, no patent law judge, no district court judge ever said that this was an abstract idea. Can I clarify one thing? Obviously, there was the impact of the alleged malpractice on the Alpine litigation, but at least as I read the complaint, I thought you were also arguing that the loss of the impact it had on the patents harmed you in that you would have had patents you could have used for royalties and licensing as well. Your damages include all of those different ways that this patent could have been used? That is correct, Your Honor. Patents could have been licensed not only litigated, but they could have been licensed to others as well, to other companies that were not parties. So when we talk about the case within a case, we need to look at not just the Alpine litigation, but also the patent prosecution itself. The case within a case I think deals, my understanding is it would deal just with the Alpine litigation, but I do think the damage portion of it includes the inability to further, because when you have litigated patents that have been found valid, that have been found to be infringed, they become extremely valuable intellectual property when you go on to the licensing front. It's much easier to license them, and you typically can get a higher royalty rate in doing so. At this stage, the issue that I think you're alluding to is whether we apply to the case within a case the law as it stood at the time of the alleged malpractice or the law as it stands at the time of litigation, and that's where Alice comes in, right? Yes. So your first position is that we apply the law as of the time of the alleged malpractice? That's correct. Your fallback position, I think, would be that even if we consider, Alice, that now in light of Enfish, it still would be a defense of patentable concept and not an aspect of it. Exactly so. We have both positions. Would it be beneficial if you lose on the first one but win on the second? Or then come to the second, I should say. Would it be beneficial for us to vacate and remand this case for further development of the record in light of Enfish? That's certainly a possible avenue. I would simply prefer the result that Alice being a post-review or a post-conclusion of review decision is not to be applied retroactively because a judgment had been entered in the Texas litigation. I'm not asking you to concede that first point, but that is a difficulty. I mean, we would not be making the law for this case over. We would be making a rule of law that I don't think we've made either way before as to whether we apply law at the time of the alleged malpractice  I think the closest case we cited from a federal appellate court was A.O. Smith that said that the conduct of the attorney should be judged at the time of the events that occurred, not by subsequent decisions. At what time is that? I mean, what court has rendered that decision? That's the Seventh Circuit, Your Honor. That's correct. On that, I am not certain. I would say you have to use the law as the advocate understood it to be at the time the events occurred, which here is the mid-1990s. I can't determine whether the act was committed that constitutes malpractice, but we're to another issue now as to what it is the approximate cause of. That's an element in there, too. Yes. And it's not necessarily going to be given by the same time law is. I'm only asking you to say there isn't any law or any case that decides that. I'm not asking you to concede anything. I'm not aware of any decision from this court that decides that particular issue. I'm also confused about this case-within-a-case concept, not only the Alice question, but how do we know which issues to look at? Alpine never raised a 101 defense in its summary judgment motion. It did not. It abandoned it. It chose not to litigate it. In a case-within-a-case, do we get to go hunting for any issue, any hypothetical litigant might have raised, or do we sort of look at the actual case that was litigated and whether it would apply Alice or not if it had been raised? If it wasn't raised, do we raise it for them? That seems like an extraordinary job. I don't think you do because I think Alice, the way I understand it, and neither Alice nor Bilski nor Mayo, all of those decisions issued after review of the Texas case was complete, and they should not be applied retroactively, therefore. That being the case, I don't think they apply to a trial-within-a-trial determination either. Right, but does a trial-within-a-trial look at at least what the issues were that were being litigated in that trial? It just seems odd to me that we construct our own hypothetical litigation with every issue that can be conceived of. I suppose that, I'm an optimist, I would say that's probably a problem for a district judge to deal with if we prevail on appeal, but I do not think you would consider any of those decisions. So you're saying that sort of what would happen with the case-within-a-case is something that, suppose you put evidence on, or you would show that they hadn't raised the issue, and what would have happened in the litigation had you not had these patent problems? That's all sort of factual stuff that needs to be discussed. Yeah, if I understand you correctly, if we're back and doing the trial-within-a-trial, our position would be that Alice and the other 2010 imposed decisions cannot be applied. Because there was never a 101 issue in the case? Yeah, but this is a malpractice case, and you've got to judge the malpractice in light of the law that existed at the time and the advocate's understanding of the law. I'm asking you not just the law at the time. Do we look at the issues that were actually being litigated in the underlying case? Yes, you would. I assume that in the trial-within-a-trial, you'd have the question of whether the claims were valid, whether the claims were infringed, and you'd have to show that you had a reasonable probability of prevailing on that in order to win the malpractice action. Yeah, now the issue that I'm coming to, and I think you understand what I'm coming to, is even if you establish that the lawyer committed some act which was not meeting professional standards which would constitute malpractice, it is still essential to your recovery that you show that that caused damage. Now, if the patent in question was invalidated under 101, then you haven't lost anything of value, have you? I'm not asking you to concede. I'm saying if that were the case, if applying Alice invalidates the patent under 101, then you haven't lost anything of value, have you? No, except that I would say the standard to be applied was what everybody believed 101 to require as of malpractice. Yeah, you're just saying that Alice would apply. But if Alice were decided the next day, under Alice as understood before infish, it was at least arguable that the patent was not, the content was not patentable, and that therefore you hadn't lost anything of value by reason of the act which otherwise did constitute malpractice. If you judge it that way, then yes. Although on the damage point, I would say with respect to our breach of fiduciary duty claim, my understanding of the law is that we do not have to prove damage resulting from the breach. That's a different case. Your malpractice case and your breach of fiduciary duty case. We can question you about that one too, of course, if we're through with the malpractice one. Can I ask just a more rapid question? The Grossman Affidavit, how is it inconsistent with your theory before the PTO? Or what you keep talking about self-serving. I was trying to understand, get a better sense of how it was. Well, I think our complaint says, or certainly our argument says, that it doomed the patents in the PTO. It led to a heavy, heavy criticism from the patent office on the conduct of Dixtine Shapiro. And this is a bit of hindsight, but if I were engaging in corrective measures, after I had said uh-oh to my insurer, I would also have said to my client, here's what's going on. There could be malpractice. We do not think so. We have notified our insurer. Here's our recommended corrective course of action. What do you think? There's no evidence of record that they did that. And I don't think we have to allege further what Britannica would have done. But to my way of thinking, what Britannica would have done would have been to say, look, I would not have blamed the staff. That sounds like passing the buck. I would not have blamed the PTO. That sounds like super passing the buck. I would simply have said that we left a page out of an intermediate application, and the subsequent application and the prior application both said they were continuations back to the original patent in the 671. Once they put that affidavit in there, I think they were dead. Okay. So when the district court said you were all rowing in the same direction, that you had the same motivations. Is that a fact question you dispute? Yes. I don't believe in the parallel interest argument. I really do not because, number one, you know, Dixtine Shapiro says to his insurer, we've got a problem. But it doesn't say anything to its client. And with respect to Judge Bates, he concludes that there's a parallel interest here, and I don't think that's sufficient because that encourages the attorney to remain quiet. I do want you to go into that. I have the same question. Yeah. It does appear that the district court was, Judge Bates, I guess, that Judge Bates was correct that it is in the interest of Dixtine Shapiro to have the patent saved if possible. Yes. It was in the interest of the Sacrapedi Britannica to have it saved if possible. What is the conflict of interest at the PTO appearances? It's the Hendry case. You better talk to your client. You better make full disclosure. That's a different question than the one we're asking. What is the conflict of interest between the client in Sacrapedi Britannica and the law firm Dixtine Shapiro? Don't they both want the patent saved? They both want the patent saved, Dixtine Shapiro, for its own reasons and its own reasons were to avoid a malpractice claim. That's fine. But if they got it saved, it was saved for both. And I'm not sure that I see what the conflict of interest is. Judge Bates' reasoning seems to have pretty convincing evidence. Yeah. I think they had the obligation to speak up because a lawyer, if nothing else, is an advisor. That may be. But that is a different question. Yeah. I agree with you. They both wanted the patent saved. But, you know, if I'm a doctor and I operate and I take off the wrong leg, do I remain silent with the patient? I don't think so. I have a parallel interest. I want the patient to live. I think your patient probably knows it. And I think, like all analogies, that would be imperfect. Perhaps. Neither you nor the doctor wants the wrong limb taken off. You and the doctor both want the right limb taken off. And we both want the patient to live. Yeah. But here, both wanted the patent to live. But the doctor has to speak up. Yeah. You both wanted the patent. But the doctor has to speak up, and so did Dickstein Shapiro. And that's what the handling case says in the jury question. Your duty is breached only by not speaking up and telling them we've gone to the insurance company about the malpractice. That is the allegation of the complaint, and that's what I'm saying. It's not inconsistent with Judge Bates' finding about the parallel interest, is it? Well, I think parallel interest is encouraged. That theory encourages silence and encourages a lawyer to say, maybe I shouldn't say anything except to my insurer, and maybe I'll get off the hook. But that still goes back to the point that you're saying the fiduciary duty is breached by not reporting that you've gone to the insurance company rather than by what you did to PCS. Yeah. Well, we're not the ethics board here, and so what I'm trying to figure out is I thought when I asked, what we have here is a dismissal and a pleadings, part of which relied on this determination that everybody was rowing in the same direction for the PDL. And when I asked you whether you disagreed with that determination as a matter of fact, not a matter of ethics rules, but as a matter of fact, that in fact things might have been handled differently had they come forward and said what's going on, you said, yes, that's a question of disputed fact. But now it sounds like you're just saying it's not good ethics form. Is it a question of disputed fact as to whether things would have transpired the same if they had come forward, or that's not your point? No, I apologize. My point was that we don't have to go beyond the allegations of the complaint. We get the benefit of those allegations and the benefit of the reasonable inferences from them at this stage. Right here. Allegation of the complaint is that it was – this is why we're going in circles here. The allegation of the complaint was that it was a self-serving filing before the PTO. And I think Judge Silverman was asking, was it a self-serving or was it a self-serving and client-serving at the same time? Judge Silverman there. I'm sorry. I'm sorry. I don't think it was in favor of Encyclopedia Britannica the way it was done. Okay. In what way? Because they admitted to so many mistakes and blamed so many others that I think they extinguished any chance they had. Now, maybe Dixie Shapiro thought that was the best way to do it. I don't know. It seems to me that's past the complaint stage and maybe into the evidence. And maybe it's a question of whether we get damage for something beyond a breach of fiduciary duty. But I wouldn't have done it that way. The only other thing – oh, I guess – I think we're way over. About ENFISH. Yes. ENFISH is a case in which, as I read it, the Federal Circuit found that the – and concluded that the software in question fit into the exception acknowledged in ALICE for software that improves the performance of the computer. Correct. I agree. Okay. But you haven't made the argument that your software does that. And that was on the table ever since ALICE. So I don't see why we need to worry about how ENFISH could affect this case. You didn't raise this point. I think the reason we cited ENFISH was, one, because it said we don't even go past the abstract idea stage because the software makes an improvement. I don't fault you for alerting us to it. Thank you for that. The claims – to my way of thinking, there are some arguments that we had to somehow improve hardware. And ENFISH says you don't have to improve hardware. And I thought, to be honest with you, I think our brief does make the argument that the claims represent an improvement in software. ENFISH adds that functionality language as if it were eligible to what ALICE has produced. It improves the use of a database, which is a software construct, to my way of thinking. I mean, it sits on a hard drive in a computer, yes, but it is a software construct. So I apologize if we didn't make that clear enough, but I think that's our view on that. Well, this goes to another question I had, and that is part of the issue under 101 is a determination made by reference to the state of technology at the relevant time. And so in determining 101 patentability, we would need to look at the state of technology back then. We all sit here now, and things seem very different because technology moves very fast. And so as part of the problem – as part of the problem, the lack of district court findings on the state of technology, is that something you disputed about how innovative this was back then as opposed to looking at it now? Back then, how innovative was it with reference to the state of technology at the time? When you get to 101, it's amorphous. When you're under the other patent statutes, you must look at the time of the invention, what was known at the time of the invention or shortly before. When you get to 101, that time distinction really doesn't occur as I read the cases. They simply ask, was this an abstract idea? Now, though, in both Bilski, the hedging case, and Alice, the settlement case, the Supreme Court pointed to a specific treatise, two of them in Alice, that said, well, hedging is well-known according to this reference, and intermediated settlement and clearinghouses are well-known according to these references. In other words, they said, we look at this whole claim for what kind of concept it discloses, and we see the whole claim in this art which establishes that it was a well-known economic practice. Well, that has to be prior to the date of the invention. That has to be contemporaneous as far as the technology involved. Regardless of what the law is applied as of then or later, what the technological decision as to what the state of the art is has to be contemporaneous. The problem we had with what happened in the district court is that it's all over the place. There's a citation to one reference on the web to encyclopedias, and there's comments by the district court about databases that have been known for thousands of years. You can scan through encyclopedias. It's nowhere near like the standard used in Alice or Bilski. Nowhere near. There's nowhere in there where somebody says, here's a reference that shows the whole concept of claims 29 or 30 or 96 or 113. When these came out, the praise was in one of our briefs. Where is it? This is your own praise of your product? It was Compton's. It was a comment about the, yeah, it's a GA 2700, and this was in PC Magazine. It says, Compton's multimedia encyclopedia is the first successful implementation of a product that combines words, pictures, and sound with an easy-to-use search engine. That's the entry pass into the database. The product is incredibly adaptive to users' needs. You can't help but be impressed by Britannica's courage and foresight in launching the product. You know, think about it then, not now. Now you have your smartphone, you have map programs. I guess I'm asking a simpler question. If we think about then rather than now, is it a fact question what the state of technology was at the time? Yes. All right. It seems to me what you were saying a moment ago about state of the art at the time goes to novelty, not abstractness. Well, I think if you look at, you know, Bilski and Alice say that it was the state of the art earlier than the patents that showed that this was an abstract idea. So I think you do look at the art at the time. Whether you're trying to decide whether it's an abstract idea, I grant you conceptually you could have something later in time, I suppose. I don't know how you'd do that. I don't know how you would say this is a known economic or business practice, this is a known medical practice, unless it was known prior to the time. Well, Alice asked whether it was well-known in the art. Pardon? Alice itself talked about whether it was well-known in the art. Yes. Thank you. I think we'll leave it there. Are you guys okay? I'm sorry. Go ahead. Good morning, Your Honor. Tony Downs for Dixie and Chappelle. I'm sorry. I'm caught, too. My sympathy. As we said, a long way from her. It's a good thing I'm this far from you. Can I just step back for a minute and give a little background overview to this case because I think it's important in light of all the questions that just came in. In the Texas case, the Section 101 issue was raised as a defense, but when the case finally got rolling in front of the district court in Texas, and there was actually two cases that ultimately got consolidated, so it took a while for Texas to decide, the first summary judgment motion, the first motion that came in really before there was a lot of other proceedings, was this motion on which the case was ultimately dismissed, which is that because of alleged errors in the prosecution of the early patents, the chain of priority in those patents was cut such that some old Dixie patents were prior to its own stuff, and therefore the whole thing was invalid. You suggested, Judge Miller, that the Section 101 defense was abandoned. It wasn't abandoned. The judgment was rendered on the other issue before there was any other proceedings going on in the case. I thought, how many summary judgment motions do you get in a patent case? Well, in this case in Texas, really, it was really early on, right after the— I know, but I mean, as a lawyer, how many—do you get to try one summary judgment motion, and if it doesn't work, then you come in with another? Yes, you can if the court will allow it. It depends on the court rules. Nobody ever argued—nobody argued in this case, when the Section 101 issue came up in front of Judge Lambert, that it was abandoned and it shouldn't be heard. It's not abandoned. Just look at it. There's no 101 issue. You've got the summary judgment brief. There's no 101 issue being litigated. Do we have to go through the entire Patent Act and say, is there anything we can think of after the fact that lawyers back then might have been able to raise but didn't raise, and on that basis determine that, have they raised it and litigated it? And then we apply modern law that we also come up with that didn't exist at the time and mix it all together and say, they would have lost. That seems— The case-within-a-case doctrine looks on an objective basis. Would you have suffered the damages of the loss of that case? And the loss of that case could have occurred not only on the basis of what it did lose on, but also on the basis of other grounds that were raised but never reached because the court never got that. I'm sorry. Raised in a summary judgment motion? It was raised as a defense in the case. And the answer is just a long string side of boilerplate defenses. But then they go through a discovery. They did go through a discovery. Well, they chose to go to summary judgment without discovery. Discovery was stayed. Right. I don't know why they wouldn't think that part of the objective inquiry would be that if there was a killer 101 argument, it would have been raised at summary judgment. I just don't know how we courts are supposed to administer this test where we come up with arguments that were not advanced by the attorneys in the case that's at issue all in our own. That's the point of the case-within-a-case doctrine is that you can try other issues in the malpractice case and say you never would have won this case. You may have lost on this one ground that involved alleged malpractice. Has the Supreme Court said that's how it's supposed to work? It's a question of state law, the case-within-a-case doctrine. And there was no argument here. I mean, this is a completely coming-out-of-the-blue issue, Your Honor, that was never argued. It never raises a reason why Judge Lambert shouldn't have entered his section 101 decision. The only issue on the section 101 that was discussed- Because it all went off on judgment on the pleadings. Judge Lambert didn't think that we had to have any inquiries into what would have been raised at the time given the state of the law at the time. But that was- Those are exact questions. They had a chance to oppose the section 101 motion for judgment on a pleading with any argument they could have raised. They did not raise that argument. They didn't raise it. They waived it. If we're trying to figure out- Judge Santel, I'm going to write this down. Let me make sure that I understand the case-within-a-case. The case-within-a-case occurred because there was a loss that resulted from the malpractice. That's the theory. That's correct. So then the case-within-a-case is tried as to- or hypothetically tried as to what other defenses might have been available that would have rendered the case invalid anyway. Exactly, including this section 101. It would be in the case-within-a-case raising some defense other than that which governed the act. And section 101 is one of those defenses. This case is section 101. Yes. But then do you ask the question, isn't it a fact question, what would have been raised at that time? No. No, because you're looking at it objectively, given the defenses that were raised. And, again, this argument was never made. They never made that. But you look at what the other defenses were, and if one of those defenses- And when we make that objective inquiry, what I'm asking you, is it an objective inquiry to what lawyers back at that time would have raised, given the state of law at that time? Or is it an objective inquiry into what lawyers today would raise? Well, in that case-and keep in mind, first of all, that Alice was a Supreme Court decision, which has a history that's like seven years long, extending back into the time- I'm sorry. I'm not talking about the law. The governor was saying-it's a straightforward question. Do we ask objectively what lawyers at the time would have raised, had this malpractice basis for dismissal not arisen, or do we ask what lawyers today would raise? In either case, it doesn't matter, because at the time, they raised the Section 101 defense. But would the judge-do we, as a judge now, look at what the result would have been of raising that argument at the time before Alice, or do we look at it as of the litigation after Alice? All right, so with respect to the Section 101 issue, I think the Supreme Court's decision in the Rivers v. Roadway Express case applies here, which is that-keeping in mind that this notion that there is an exception to patentability for abstract ideas, the Supreme Court itself has said it extends back 150 years. You're getting way past the question I asked you. Well, all right, so- Go back to the question I asked you. Now, if I remember, it had to do with whether the law that would be relevant is the law as of the time of the committed malpractice or the law as of the time of the litigation over the malpractice. For purposes of interpreting Section 101, which is a federal statute, Rivers v. Roadway, the Supreme Court says, when we announce the interpretation of a federal statute, when it comes up again in another proceeding, including such as this one, you apply the law of the statute, the interpretation of the statute that we have announced, as if it was always the law. Now, I believe the rule of retroactivity is that we apply that to all cases that are open. We don't apply it to closed cases. That's the Platt v. Splinter Farm problem. We don't reopen judgments. It applies to open cases, not closed cases. And so, the case within a case- Is it open case? No, it's not. It's not even a real case. It's not a real case, but it's looking at what would have happened at a time when it's probably a 99.999% probability it would have been closed long before Alice came down. So, the retroactivity argument, I don't think, helps you. The summary judgment in the Texas case on the other issue was entered in 2009. So, the cases that became Alice were being filed around that same time. So, you can't say that it would not have resulted in the decision in Alice itself. But we can't- I don't know. That's why this feels like almost factual questions to me. How long would this litigation have taken? Would it have been open or closed? But those aren't factual questions that the courts looked into in the case law. On the case within the case, you look to an objective standard of what would have happened. But again, you're asking us to say that the governing law is- You're trying to apply the Supreme Court's retroactivity rules, but that test itself asks whether it's an open case. And by the way, you normally have to preserve the claim, too. But you have to preserve the claim and it's an open case. But when we're dealing with hypothetical ones, which never actually open and never actually close- So, the case law on the case within the case- Let's say I look at the state case law. When you're dealing with- When you say the case law- I'm sorry, can you tell me which case law? The cases that we cite in our brief, I believe, Your Honor. If there's others, we'd have to- And it's local D.C. law that you say is the governing law here. It might be outside of D.C., but the cases we cited included D.C. law. But don't we need to know? Is that the one that should be governing here? I'll look at the briefs in a minute, Your Honor, but let me try to answer the question. I forgot. With respect to the state of mind of an attorney, say, who was accused of committing malpractice during the morning in the midst of a trial, then you look at his state of mind, of course, in light of what the law was at the time, because that's all he could have known at the time. But with respect to something else like this, you look to objectively what the law is and what the results should be, not what it, quote, would have been applying the law at the time. And that is the rule of the case within the case. It just feels like it's a one-way ratchet to me that we protect the lawyers. We don't expect them to know what the law is going to be half a decade down the road in patent law. But when it comes for client, we say you made the best decision you could at the time. But then when we're litigating the case within a case, we don't do that. We want to limit client recovery in malpractice actions. We come up with a rule that says even if your case would have been won at the time the malpractice occurred, the fact that half a decade or a decade later a different legal scheme applies, you still lose. When you say that, you're saying it in the context of a statute, not common law. It's a statute here that arguably means whatever it meant by law, even though no one knew it, as opposed to common law where the court is changing the law. It's a pure question of law here on this Section 101 issue. If it was a subjective question, how do you predict what a jury would have held in the case within the case? That jury in Texas at that time, how do you make that prediction? They don't try to look back into the subjective circumstances of how the case would have actually or likely have come out. Especially with respect to Section 101 where we're dealing with a federal statute on an issue which the Supreme Court has recognized is an issue of abstract ideas that are not patentable. That's been in the Supreme Court doctrine of the patent law for 150 years. Do you agree with your friend that EnFISH did not work a great change in our understanding of Alice or the teachings of Alice? I totally agree. EnFISH did not change Alice. Alice has been now applied by the Federal Circuit. The language about the functionality that is in EnFISH, is that not different than what was in, or in addition to what was in Alice? What Alice teaches you is that each case you look at the specific language of the claim and what it is the claim is about. To determine whether it's an abstract idea. Abstract idea or not. When you're looking at software, Alice was looking at software, EnFISH is looking at software. EnFISH adds to the discussion about the functionality and improving the functionality of the computer. Is that something that is new in our understanding of Alice? I'm not asking what's consistent or inconsistent with the Supreme Court, that might be harder. Is it a bit new in relation to what we understand from Alice? No, Alice said, in a two-step process, one is you look to see whether it's an abstract idea. And two, you look to see whether or not it adds something new to the functioning of the computer, or whether it is just using a computer to perform well-known steps. And we submit that... Then what do you understand EnFISH to say, either parallel to, within, or in addition to Alice? What do you understand EnFISH to say beyond those two? All EnFISH says is that that particular claim in EnFISH falls on the side of patentability, because it adds to the technology of the computer. And it's a very different kind of claim, which I can explain to you. Is that a new step added on to the two steps of Alice, or a new, I guess, exception to the two steps of Alice? No. So you're saying that if it improves the functionality of the computer, then it is patentable, and not an abstract idea? No, it's not a new step. It falls within the framework of Alice. But in Encyclopedia, in this case... So you would see no point in any remand for reconsideration in light of EnFISH, if we otherwise determined that the law today governs, rather than the law at the time of the malpractice? Well, not for... If you're done, I'll give you the answer. I know, I need my time to think for a second. EnFISH doesn't change the law of Alice. Alice is the law. The question is, do you want a remand? Do I want a remand? Well, we think that Judge Lambert's got it dead on correct. The claims of these patents are very different from EnFISH. And I realize you don't typically deal with patents, but we have now a body of Federal Circuit law after Alice, which has looked at 15 or 16 different kinds of cases. Only two, EnFISH and one other case, have said that the claims that they were considering on appeal have survived and are patentable. And EnFISH is somewhat unique. And in fact, I think it actually helps us because it shows kind of how detailed and how specific your computer improvement has to be in order to survive the Alice account. If you look at... Does that improvement have to be with respect to existing technology at the time? The issue with respect to Section 1 is not the same as whether or not it's novel or anticipated. I'm not asking novelty, I'm asking does it have an inventive concept. Under Alice, they said that they did look at the state of prior art at the time. When they look at functionality in EnFISH, are they comparing this new functionality to the state of technology at the time? So in EnFISH, the court had already concluded that the patent was not invalid for obviousness or novelty issues. So that was never an issue or not because it was found already to be new. And that's not so much an issue here either because we're not arguing... I guess I'm going to go back to the question one more time. When you're just looking at functionality, do you even under 101 compare that and making the 101 decision to the state of the art at the time? So in the Section 101 decision, when you're making the decision about whether something is abstract or not, you look at whether it is, for example, performing a series of steps or a method or something that was known in the time. And I can explain to you exactly why in the case of these Encyclopedia Britannica claims, those functions that are being performed are an abstract idea that were known in the time. Is that a fact question, whether it was known at the time? No, and I can explain it's not. In fact, in Alice, those footnotes and things were not found as a matter of fact by the judge. As I understand it, they were added in through the briefing where people said, well, here's an example of this or that. So it's a question of law, what the state of technology was at the time of the Encyclopedia Britannica. So just for example, would you need to have a finding of fact to establish that there were automobiles in 1950? No, you wouldn't. That's something that you can take into account as a matter of public record. And I think that's the way the evidence came in in Alice with respect to the business practices or in Bilski with respect to business practices. Well, I guess I'm assuming a patent issued here, which has a presumption of validity, and you're supposed to have clear and convincing evidence of invalidity. And so I'm assuming that there was some showing in the patent office itself before issuing the patents would have required some showing of inventive concept, both under 101, not just novelty, but under 101. No, the patent office did not review for Section 1 specifically. It did review for novelty. Yes, there are many references cited showing that before the particular filing date there wasn't something exactly like this. But that's a different inquiry than in Alice, which is looking at whether you're taking an abstract idea of something that actually was, in this case, reading a map, for example. Maps have been around. I mean, you don't need fact-finding to know that maps have been around for a long time. Encyclopedias have been around for a long time. Reference books, tables of contents in encyclopedias have been around. Indexes, cross-referencing of articles. All those are things that— Whether this improved the functionality at the time. So those things were all done in books and in maps, right? All the things that they claim here were done in books and maps, except now they're doing it on a computer. And what Alice says is when you take those kind of functions that were done before and you just do them on a generic computer, that's not enough to not make it an abstract idea. You can't just computerize, using a generic computer or software, something that was done before and say, you get the invention because now it's on a computer. That's what Alice says. That's exactly what Judge Lambert found here. All right, thank you very much. Can I just briefly—I'm sorry, can I briefly address the fiduciary duty question? Sure, just one minute quickly. All right, so with respect to the fiduciary duty, the record in their own complaint shows that Britannica knew all the facts of the alleged malpractice. They knowingly sponsored Dixtein to submit all these petitions, including the affidavit, to the Patent Office. They had separate counsel, Baker Botts. They were all working together. I'm sorry, where is it in the pleadings that it was sponsored and that they were all working together? So they attached to their complaint the judgment of the District Court, talking about Dixtein—I mean, Encyclopedia Britannica filing things. There are briefs of record where Britannica's own briefs saying, we filed in the petitions in the Patent Office. They quote from the Dixtein declaration. We cite all that in the record in our brief. They were all rowing the same boat to get the patents allowed. Dixtein fell on its sword by, you know, taking a blow and going to the Patent Office and even their own allegations admit that Dixtein essentially admits negligence in its declaration. There was no conflict of interest. They were all pulling together for the same thing, and that's why Judge Bates ruled that there wasn't any breach of fiduciary duty. All right, thank you. Thank you. Okay. Mr. Hoskin, are we fine now? I'll just give you two minutes quickly. Thank you, Your Honor. On the procedural context, this case was limited to a first phase, which identified four claims for the trial within a trial, and the only invalidity ground that was going to be considered was Section 112 of the patent statute. Everything else was reserved to a second stage. Judge Bates found that there was no notice given by recitation of Section 101 in the complaint when he was dealing with the statute of limitations issue. We got the decision about 101 while we were still in the first phase, when we should never have gotten it. That should have been part of the second phase, or there should have been some reorganization of what was going on. It was a bit of a surprise, to put it mildly. As to the trial within a trial... I'm sorry, I don't want to prolong. I'm not sure I understand what you just... For example... There were two phases in the district court before... Yeah, two phases in the district court. We were in the first phase, which excluded 101. We identified some claims... Hang on one second. Are you talking two phases in the D.C. district court litigation or the Texas litigation? The D.C. The D.C. The D.C. litigation. Sorry. Thank you. Go ahead. One phase identified four claims for the trial within a trial, and then Dickstein Shapiro has claimed to criticize us on appeal for trying to argue with respect to all of the claims. Well, what did we have that we were dealing with in the district court was a limitation that we think was unfairly employed by Dickstein Shapiro. Second, on the trial within a trial... I think, yes, in a trial within a trial, a 101 defense could be raised, but it must be based on the law, as was understood at the time by the advocate, because it's a malpractice case. And if you use some subsequent law, then you're making malpractice impossible to prove and you're giving them the retroactive benefit of a post-judgment decision, which they're not entitled to have. If we were in that trial within a trial, we would come up with and say, Here's the art at the time. Here's how we are an improvement in functionality of a computer. And NFISH is a bit different because what it says is, on the first step, it's not an abstract idea if it improves the functioning of the computer before it gets to the second step. That actually is not in out. Correct. I think you're correct on that score. So we would use, if 101 came up at the time, we would use evidence of what the art was at the time. Under 101 and 102 and 103, well, certainly under 102 and 103, under 102, if an invention's old, you've got to have one reference, a piece of evidence that shows everything in a claim. Under 103, you have to have a combination that a person of skill in the art would make that shows everything in the claim. Lawyers' arguments do not suffice. Just to clarify one thing, when you briefed judgment on the pleadings in this case, was the 101 issue raised there? I thought you said that was going to be this. I'm confused now by the two tiers. Yes. Yes, because if I understand Your Honor correctly, yes, they made the Dixon Shapiro's counsel made the motion for summary judgment based on 101. We briefed that. Judgment on the pleadings, not summary judgment. On the pleadings. On the pleadings, I believe, yes. That's very different. I believe we did. I was not the trial lawyer, so I apologize if I'm not able to satisfy you on that score. At any rate, we request a remand. What happened here to Encyclopedia Britannica really was not right. It deserves to stay in court, and we ought to go back and flush out the record. Thank you very much. Thank you very much. Thank you. Thank you.
judges: Millett, Ginsburg, Sentelle